UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In The Matter Of:

JOHN R. PARRINELLO, ESQ.,
an attorney admitted to
practice before this Court,

                                        Respondent.

DECISION AND ORDER

Case # 15-MC-6007

## PRELIMINARY STATEMENT

On October 5, 2015, this Court, having good cause, issued an Order to Show Cause as to why:

1. The Order of Private Reprimand issued by this Court to John R. Parrinello, Esq. on April 22, 2013 should not be made public;

2. The Court should not take further disciplinary action, including censure, sanction, suspension, or disbarment, against John R. Parrinello, Esq. for violating the conditions of the Order of Private Reprimand issued April 22, 2013, due to his conduct on August 24, 2015 in the courtroom of United States Magistrate Judge Jonathan W. Feldman;

3. The Court should not take further disciplinary action, including censure, sanction, suspension, or disbarment, pursuant to Western District of New York Local Criminal Rule 44 and Local Civil Rule 83.3 against John R. Parrinello, Esq. for

violating Rules 3.3(f) and 8.4(h) of the New York State Rules of Professional Conduct due to his conduct on August 24, 2015 in the courtroom of United States Magistrate Judge Jonathan W. Feldman; and

4. The Court should not grant such other relief as the Court deems equitable and just.

The Court gave Respondent John R. Parrinello, Esq. an opportunity to respond to the Order to Show Cause, and it conducted a hearing closed to the public on November 20, 2015. Respondent appeared at the hearing with his attorney, gave an oral statement after his attorney spoke, and responded to the Court's questions. At the conclusion of the hearing, Respondent agreed that there were no factual issues in dispute and that he had nothing further to add.

After reviewing Respondent's sealed Response to the Order to Show Cause and the statements he and his attorney made at the November 20, 2015 hearing, the Court finds that on August 24, 2015, Respondent John R. Parrinello, Esq. violated New York State Rule of Professional Conduct 3.3(f) by engaging in undignified or discourteous conduct and by engaging in conduct intended to disrupt a tribunal. Additionally, the Court finds that Respondent violated New York State Rule of Professional Conduct 8.4(h) by engaging in conduct that adversely reflects upon his fitness as a lawyer. As a result of violating these rules, Respondent also violated Local Civil Rule 83.3 and Local Criminal Rule 44, both of which incorporate the New York State Rules of Professional Conduct.

Accordingly, for the reasons that follow, the Court suspends Respondent John R. Parrinello, Esq. from the practice of law in the United States District Court for the Western District of New York for 180 days, effective immediately. Furthermore, the Court determines that the Order of Private Reprimand issued on April 22, 2013 shall be made public. Finally, to

2

the extent certain documents underlying the Order of Private Reprimand are sealed—specifically, the statements by witnesses to the incident and the record of the November 20, 2012 proceeding before United States Magistrate Judge Marian W. Payson—those documents shall be made public.

## BACKGROUND

This Decision addresses an incident that occurred in the courtroom of United States Magistrate Judge Jonathan W. Feldman on August 24, 2015. However, the August 24, 2015 incident is, unfortunately, not Respondent's first instance of misconduct in the Western District of New York. This Court issued an Order of Private Reprimand on April 22, 2013 based upon another incident that occurred on November 16, 2012. Notably, in issuing the Order of Private Reprimand in 2013, the Court considered that even the November 16, 2012 incident was not the first time Respondent failed to conduct himself appropriately in this District.

Below, the Court first revisits the circumstances surrounding the November 16, 2012 incident. The purpose of revisiting this incident is that in the resulting Order of Private Reprimand, the Court noted that if Respondent's future conduct warranted a new round of disciplinary review, the Order of Private Reprimand would be made public and would then be factored into the Court's determination of the new sanction. Indeed, Respondent's conduct has now warranted a new round of disciplinary review, so the Court has considered the Order of Private Reprimand in determining the appropriate sanction here.

After reviewing the November 16, 2012 incident, the Court will then turn to the incident that occurred in Judge Feldman's courtroom on August 24, 2015. Finally, the Court will discuss the appropriate sanction to impose.

## SEALED ORDER OF PRIVATE REPRIMAND – APRIL 22, 2013

This Court issued an Order of Private Reprimand to Respondent on April 22, 2013 for misconduct that occurred in and around Judge Payson's courtroom on November 16, 2012. In short, affidavits from various Deputy United States Marshals and Court Security Officers detail that on November 16, 2012, Respondent exhibited inappropriate and unprofessional behavior. Specifically, on the morning of November 16, 2012, Respondent became agitated about not being able to meet with his client in a timely fashion prior to a status conference before Judge Payson. Accordingly, in an interview room at the United States Courthouse in Rochester, New York, he stated to various Deputy Marshals in an aggressive manner, "The Judge ordered this guy in for 8:15 hours today and you motherfuckers can't even get him here on time," and "You place him in fucking Steuben County which makes it difficult for me." Respondent then exited the interview room and, in a hallway outside of Judge Payson's courtroom, was ordered by the Supervisor of the Deputy Marshals—who identified herself as the Supervisor to Respondent—to calm down. Respondent responded to the Supervisor by stating, "I don't give a fuck who you are." Respondent then entered Judge Payson's courtroom where he continued to use profane language towards the Deputy Marshals.

The Supervisor reported to Judge Payson that Respondent was having loud, angry outbursts and was causing disruption both in the hallway and the courtroom. Based upon this report, Judge Payson wisely decided not to proceed that day and adjourned the matter without returning to the courtroom.

After Respondent was informed of Judge Payson's decision not to take the bench, he told Judge Payson's courtroom deputy to "get [Judge Payson] out here" and to "go back there and tell her I want her on the bench."

4

Three days after the incident, on November 19, 2012, Respondent sent an email to United States Marshal for the Western District of New York Charles Salina protesting the fact that, subsequent to the November 16, 2012 incident, Salina had banned Respondent from the Marshal's cell blocks in this District. Respondent said in the email that he considered Marshal Salina's action unconstitutional. Respondent also categorically denied that he was acting in an unprofessional and disruptive matter on November 16, 2012.

On November 20, 2012, Respondent appeared before Judge Payson on the same matter that was supposed to be heard on November 16, 2012. He told Judge Payson that his client was unable to make a decision regarding the status of the case—namely, whether the parties could reach a plea agreement—due to the Judge's refusal to come out and take the bench on November 16, 2012.

Judge Payson explained in detail why she declined to take the bench on November 16, 2012. She stated that it was based on the Marshals' reports about Respondent's abusive verbal tirade, which was laced with profanity and vulgarity, both inside and outside Judge Payson's courtroom. Judge Payson also noted that Respondent's tirade interrupted a jury trial that was proceeding in a nearby courtroom. She explained that despite the passage of some time between his outburst in the morning of November 16, 2012 and what was supposed to be his scheduled court appearance a little later, his reported behavior was so volatile that she determined it was prudent to adjourn the matter.

Judge Payson further noted on November 20, 2012 that four hours after the incident on November 16, 2012, Respondent sent an email to her stating that he had been "bitching" to the Deputy Marshals and that based upon what happened on November 16, 2012, the presumption of innocence was nothing more than "lip service and poppycock." Judge Payson understandably found these statements offensive, and she specifically said that Respondent's characterization of

his actions as mere "bitching" to the Marshals was an "understatement that is almost unfathomable." She stated on the record that Respondent apparently expressed no remorse and accepted no responsibility for his conduct on November 16, 2012; rather, he blamed others. She fairly characterized his conduct as "unprofessional, inexcusable, and completely and utterly unacceptable."

After the November 16, 2012 incident, this Court determined that it had ample reason to review Respondent's behavior. This determination was made, in part, because the November 16, 2012 incident was not the first time Respondent had failed to act appropriately in this District. One other notable incident occurred in 2000 when, in the courtroom of United States District Judge David G. Larimer, Respondent verbally abused and threatened Assistant United States Attorney Robert Marangola. When asked by then-Supervisor of the Deputy Marshals Charles Salina to calm down, Respondent approached the Supervisor and said, "What the fuck are you going to do about it?"

Accordingly, on January 9, 2013, Chief United States District Judge William M. Skretny provided Notice to Respondent that this Court was aware of Respondent's use of abusive, profane, and disruptive behavior on November 16, 2012. The Court also provided Respondent with witness statements about the incident in question. The Court gave Respondent 30 days to respond and, after granting Respondent an extension of time to file his response, it timely received his Response on March 18, 2013. The Response included character references from his attorney, employees, community members, and clients and their families. The Court also received additional character references.

In his Response, Respondent admitted that his behavior on the morning of November 16, 2012 was "sometimes irrational, irresponsible, and unprofessional," and that he "reacted loudly and angrily" to the delay in the transfer of his client to the courthouse. Respondent disputed the

witnesses' allegations that he was screaming and cursing only to the extent that he had "no specific recollection of the words [he] used." Respondent also provided a thorough description of the personal and professional circumstances in the months prior to November 2012 that factored into his "boil[ing] over that morning." In his Response, Respondent further advised the Court, "I wholeheartedly promise that nothing like the events of November 16, 2012 will ever happen again. You may hold me to that promise." Respondent requested that the Court not take any action that would interrupt his federal criminal practice and, thus, have devastating consequences on his practice, law partners, staff, and clients.

It is obvious that the Court considered all of these factors in deciding to issue an Order of Private Reprimand in 2013 as opposed to a more severe sanction. In issuing the Order of Private Reprimand, the Court afforded significant weight to Respondent's acceptance of responsibility. It particularly credited Respondent's candor in admitting that he used inappropriate language towards the Deputy Marshals on November 16, 2012 as well as his "wholehearted[] promise" he would never conduct himself in such a manner again.

The Court ruled, nevertheless, in the Order of Private Reprimand that Respondent's behavior on the morning of November 16, 2012 violated Rule 8.4(h) of the New York State Rules of Professional Conduct, which prohibits attorneys from engaging in conduct that adversely reflects on their fitness as lawyers. *See* 22 N.Y.C.R.R. § 1200.00 R. 8.4(h); W.D.N.Y. Local Civil Rule 83.3(a) (incorporating by reference the New York State Rules of Professional Conduct); W.D.N.Y. Local Criminal Rule 44(a) (incorporating by reference W.D.N.Y. Local Civil Rule 83.3). The Court found that Respondent's conceded unprofessional behavior on November 16, 2012, which again largely consisted of his confrontations of Deputy Marshals, resulted in the interruption and adjournment of courtroom proceedings and adversely affected the full and fair administration of justice.

The Order of Private Reprimand ordered that at all times thereafter, Respondent's conduct should be compliant with the requirements of Local Civil Rule 83.3 and New York State Rule of Professional Conduct 8.4(h), and further that his conduct should be "characterized by personal courtesy and professional integrity and [should] not be characterized as uncivil, abrasive, abusive, uncooperative, disruptive, disrespectful, hostile, or obstructive." It further stated that if Respondent's future conduct warranted another disciplinary review, the Order of Private Reprimand, on which Respondent had already been afforded notice and an opportunity to be heard, would be made public without further proceedings. The Order of Public Reprimand would then be considered in determining what sanction, if any, would be imposed for the new allegations of misconduct.

## PROCEEDINGS ON AUGUST 24, 2015

The Court now turns to the incident at hand. On August 24, 2015, United States Magistrate Judge Jonathan W. Feldman was conducting oral arguments on motions filed by various counsel in the case of *United States v. Montague et al.*, No. 14-CR-6136. The arguments were addressing six separate sets of omnibus motions filed by six defendants in the case. Several of the defendants were in custody and present in the courtroom.

Judge Feldman initially ruled on common issues relating to all of the co-defendants. He then indicated that he would hear each counsel separately on the specific issues raised in their respective motions. Prior to argument, he offered to handle counsel's motions in an order which would allow them to attend to other proceedings they may have scheduled.

Before it was Respondent's turn to argue his motions and while he was seated in the well of the courtroom, he repeatedly objected to statements made by the prosecutor, Assistant United States Attorney Everardo (Andy) Rodriguez. In short, Respondent continually objected to AUSA Rodriguez referencing his client while Rodriguez was supposed to be addressing the

other defendants' motions.   These interruptions occurred on six separate occasions.   Judge Feldman advised Respondent that he would be heard when his case was called and asked him not to interrupt the Court.   While objecting during one time in the proceeding, Respondent stated (referring to AUSA Rodriguez), "I just know I don't believe a thing he says and I don't agree with a thing he says."

Shortly after Respondent began to argue his client's motions, AUSA Rodriguez asked to approach the bench to address a scheduling issue.   Respondent objected to AUSA Rodriguez approaching the bench and further noted that he would not approach himself.   Judge Feldman stated that he would allow AUSA Rodriguez to approach the bench as he would any other attorney.   Respondent then stated to Judge Feldman, "I don't care whether [AUSA Rodriguez] has a medical emergency . . . I object to you talking to him at all."

Judge Feldman went on to conduct a brief bench conference with AUSA Rodriguez where Rodriguez requested that the Court adjourn or delay the argument of motions so that he could attend to another matter.   The Court denied his application, saying that the argument of this case was scheduled for quite some time and that the argument would not be delayed.

The argument on the motion then continued.   At one point, Respondent provided a document to the Court and also placed a copy of the same document on AUSA Rodriguez's podium; Rodriguez had, just at this moment, briefly stepped away from his podium to speak with a member of his office in the gallery.

AUSA Rodriguez then returned to his podium and noticed that a new document was on it. AUSA Rodriguez stated to the Court that he objected to Respondent "putting things on [his] podium," because he did not want Respondent reading his materials.   AUSA Rodriguez then said to the Court with regard to Respondent, "I don't trust him."

9

This comment immediately upset Respondent and he yelled several times at AUSA Rodriguez, "You don't trust me?"  Respondent then rapidly approached AUSA Rodriguez and stood face-to-face with him, causing two Deputy Marshals to immediately step between Respondent and AUSA Rodriguez.  Respondent told the Deputy Marshals to "get out of [his] face" because he wanted to continue his complaint directly to AUSA Rodriguez.  He further told the Deputy Marshals to get their hands off of him and stated, "You two guys don't run my life;" "Big deal you got badges on;" "Who the hell do you think you are;" and "I'll move when I want to."

When Judge Feldman directed Respondent to return to his podium, Respondent responded that he would obey the Court.  He then returned to the area around his podium on the other side of the courtroom.

Respondent then reported to the Court that during his face-to-face confrontation with AUSA Rodriguez, Rodriguez had called him an "old man."  Judge Feldman indicated that he had not heard the comment; AUSA Rodriguez admitted, however, that he had in fact called Respondent an "old man."  AUSA Rodriguez stated that he made the comment as a reaction to, in his view, Respondent approaching him as though Respondent was about to assault him.

After eventually returning to his podium, Respondent was still upset and stated with regard to AUSA Rodriguez, "I'll show him who is an old man because I'll knock him on his ass;" and "Who the hell does he think he is?"

The incident caused a significant disruption in the courtroom and, thus, required the response of three Deputy Marshals and four Court Security Officers.  The Court again notes that during this entire incident, there were several defendants in the courtroom who were in custody.

## LETTER FROM RESPONDENT JOHN R. PARRINELLO

On August 26, 2015, two days after the incident, Respondent wrote to Judge Feldman.  A portion of Respondent's version of the incident in that correspondence reads as follows:

> . . .
>
> I handed a copy of the document to this Court and walked over and place[d] a copy of the document on Mr. Rodriguez's podium.
>
> Mr. Rodriguez then stated, in sum and substance, that he did not want me putting anything on his podium and accused me of trying to read his notes, which was totally uncalled for.
>
> I returned to his podium[,] picked up the document and threw it on the ground.
>
> . . .
>
> I rapidly approached Mr. Rodriguez and stood face to face with him.  At that point two (2) U.S. Marshal[s], came between me and Mr. Rodriguez, one of whom stood about one inch from my face and the other one to my right.  I told them to get out of the way because I wanted to continue my complaint directly to Mr. Rodriguez's face.
>
> . . .
>
> I am sorry I let him get under my skin.

## MEMO FROM UNITED STATES MARSHAL CHARLES SALINA

Upon request from the Court, United States Marshal Charles Salina provided a memorandum describing the August 24, 2015 incident.  In the memorandum, Marshal Salina also detailed past incidents on November 16, 2012 (which resulted in the Court issuing the Order of Private Reprimand on April 22, 2013) and on January 31, 2000.

Portions of Marshal Salina's memorandum, dated September 28, 2015, read as follows:

> . . .
>
> Parrinello has been challenged by members of the United States Marshals Service ("USMS') on two separate occasions when he

11

displayed aggressive and abusive conduct towards employees of the U.S. Attorney's office and members of the USMS[.]

On November 16, 2012, Parrinello was outside of the USMS office when he began to shout obscenities in the court hallway. Supervisor Rebecca Smith approached Parrinello and directed him to calm down and control himself. Parrinello refused to comply and pointed his finger at Supervisor Smith and stated "I don't give a fuck who you are." CSO Tom Meehan then attempted to get Parrinello to calm down in the hallway as court was in session.

Parrinello responded that he did not give a shit and continued to curse and exhibit aggressive behavior toward Supervisor Smith. Parrinello was subsequently banned because of this incident from USMS space.

On January 31, 2000, Parrinello was appearing in Judge Larimer's courtroom and verbally abused and threatened AUSA Robert Marangola. At that time, I was the Supervisor and confronted Parrinello and advised him that he needed to lower his voice and calm down. Parrinello refused and began to approach me and stated "What the fuck are you going to do about it." I ordered Parrinello to stop walking towards me and calm down. Parrinello ultimately did and the court proceeding continued.

[On August 24, 2015] Parrinello again was approached by members of my staff when he exhibited the same type of behavior toward AUSA Andy Rodriguez. Parrinello again refused to comply with the verbal orders of the Deputy Marshals and CSOs by challenging their authority and attempting to bait them into a physical confrontation.

My primary concern is Parrinello's continued lack of respect and noncompliance when directed by the USMS and law enforcement to stand down when [he is] being confrontational with his abusive and aggressive behavior. In my opinion, Parrinello is a significant security concern because of his inability to control his temper as exhibited by past incidents. . . .

## DISCUSSION

The Court has considered all of the events and materials discussed above in determining the appropriate sanction to impose upon Respondent. Additionally, the Court has considered a letter Respondent submitted in response to the Order to Show Cause as well as an affidavit

submitted by Respondent's attorney that contains argument on Respondent's behalf. Finally, the Court has considered the hearing it conducted on November 20, 2015 where Respondent, appearing with his attorney, made a statement to the Court and answered the Court's questions. Due to the sensitive nature of Respondent's letter, his attorney's affidavit, and the record of the November 20, 2015 hearing, those materials will remain sealed.

After a thorough review, the Court expresses with conviction that Respondent has great difficulty controlling his emotions in the courthouse. Notably, although Respondent assured this Court in 2013 that "nothing like the events of November 16, 2012 will ever happen again," his conduct on August 24, 2015 is quite similar to the November 16, 2012 incident. Respondent once again exhibited unprofessional conduct that disrupted court proceedings and adversely affected the administration of justice.

Respondent's conduct on August 24, 2015 required the response of several Deputy Marshals and Court Security Officers. There were several defendants in custody in the courtroom at the time of this event. Deputy Marshals—whose primary responsibility is to supervise these defendants—diverted their attention to Respondent to prevent what they rightfully believed could be a potential assault by Respondent on AUSA Rodriguez. To the Deputy Marshals' credit, a review of the incident makes clear that they used remarkable restraint when Respondent approached AUSA Rodriguez to, in Respondent's words, "continue [his] complaint directly to Mr. Rodriguez's face." The Court Security Officers then had to assemble in the courtroom to provide protection to the Judge, courtroom deputy, and spectators. In short, the Court is confident that it would not tolerate this kind of inappropriate conduct by a civilian in the courthouse; likewise, it cannot tolerate such conduct by an attorney.

The Court is aware of the fact that any disciplinary action against Respondent will result in collateral victims, including his law firm and practice, his clients, his family, and this Court.

However, the Court would send the wrong message to both Respondent and the community if it excused Respondent's latest misconduct with little or no punishment.  In 2013, Respondent challenged this Court to hold him accountable for future unprofessional conduct.  That day is today.

In the Order of Private Reprimand issued on April 22, 2013, the Court made clear that if Respondent's future conduct could be characterized as "uncivil, abrasive, abusive, uncooperative, disruptive, disrespectful, hostile, or obstructive," the Court would make public the Order of Private Reprimand.  Additionally, the Court would then consider the newly-Public Reprimand in conjunction with the misconduct to determine the appropriate sanction.

## FINDING

Respondent's conduct on August 24, 2015 interrupted the argument of motions, disturbed the proceeding before United States Magistrate Judge Jonathan W. Feldman, and adversely affected the full and fair administration of justice.  In considering the appropriate sanction for Respondent's conduct, the applicable rules are as follows:

### NEW YORK STATE RULES OF PROFESSIONAL CONDUCT

New York State Rule of Professional Conduct 3.3, entitled "Conduct Before a Tribunal," reads in relevant part as follows:

(f) In appearing as a lawyer before a tribunal, a lawyer shall not:

(1) fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of the intent not to comply;

(2) engage in undignified or discourteous conduct;

(3) intentionally or habitually violate any established rule of procedure or of evidence; or

(4) engage in conduct intended to disrupt the tribunal.

New York State Rule of Professional Conduct 8.4, entitled "Misconduct," reads in relevant part as follows:

> A lawyer or law firm shall not:
>
> > (h)     engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.

## LOCAL RULES OF CIVIL AND CRIMINAL PROCEDURE IN THE WESTERN DISTRICT OF NEW YORK

Local Civil Rule 83.3, entitled "Discipline of Attorneys," reads in relevant part as follows:

> (a)     Attorneys practicing in this Court shall faithfully adhere to the New York Rules of Professional Conduct.   In interpreting the New York Rules of Professional Conduct, absent binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit or significant federal interests, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts.
>
> (b)     In addition to any other sanctions imposed under these Local Rules, any person admitted to practice in this Court may be disbarred or otherwise disciplined, for cause, after hearing. . . . [N]o censure, sanction, suspension, or disbarment shall be applied without notice and an opportunity to be heard and the approval of a majority of the District Judges of the Court in both active and senior service . . . .

Local Criminal Rule 44, entitled "Attorney Admission, Appearance, Withdrawal and Discipline, and Student Law Clerk Practice," reads as follows:

> (a)     All rules related to attorney admission to practice, attorneys of record, discipline of attorneys, student practice and student law clerks are found in L. R. Civ. P. 83.1, 83.2, 83.3, 83.6, and 83.7, all of which are incorporated by reference into these Local Rules of Criminal Procedure.

This Court finds that on August 24, 2015, Respondent John R. Parrinello, Esq. violated New York State Rules of Professional Conduct 3.3(f)(2) and (4) by engaging in undignified or discourteous conduct and by engaging in conduct intended to disrupt a tribunal. Additionally, he violated Rule 8.4(h) by engaging in conduct that adversely reflects upon his fitness as a lawyer.

As a result of violating these Rules, Respondent also violated Local Civil Rule 83.3 and Local Criminal Rule 44, which incorporate the New York State Rules of Professional Conduct.

Respondent's continuous interruptions of co-counsel's arguments on August 24, 2015 can only be interpreted as an attempt by him to disrupt the proceedings. First, Respondent repeatedly objected while AUSA Rodriguez was speaking and, in a foreshadowing of his real outburst, made a gratuitous comment during one of these objections that he "[didn't] believe a thing [AUSA Rodriguez] says and I don't agree with a thing he says." Although Respondent now argues that he was only objecting to protect his client's rights, his conduct went far beyond zealous advocacy. Indeed, the Court recognizes that in a court proceeding with multiple criminal defendants represented by multiple attorneys, one attorney may occasionally have to object out-of-turn if the prosecutor implicates his specific client. In this case, however, Respondent acted less like an advocate during co-counsel's arguments and more like a heckler in the audience. More importantly, Respondent's later outburst and threat to AUSA Rodriguez that he would "show him who is an old man because I'll knock him on his ass" has no place in the courtroom. Respondent's blatant disrespect to the Deputy Marshals, who were attempting to protect everyone in the courtroom, was also unprofessional and undignified.

In sum, Respondent's conduct created a dangerous situation in a courtroom that was, at the time, housing several in-custody defendants. Respondent interrupted the argument before Judge Feldman for several minutes, and Deputy Marshals and several Court Security Officers

needed to respond to protect the Court, staff, and spectators.  Respondent's conduct and history of inappropriate behavior adversely reflects on his fitness as a lawyer.

## SANCTION

The sanction at the end of this Decision has been unanimously approved by the District Judges of the Western District of New York, both active and senior.

Respondent's request that this Court impose, at worst, a reprimand for any finding of misconduct is denied.  Such a response would minimize the Court's clear warning in the Order of Private Reprimand dated April 22, 2013.

This Court cannot ignore the fact that it already acted with leniency in issuing the Order of Private Reprimand to Respondent in 2013.  The Court considered Respondent's personal and professional stresses at that time.  The Order of Private Reprimand was conditioned upon Respondent conducting himself with "personal courtesy and professional integrity."  It stated specifically that Respondent's future conduct in the courthouse should not be characterized as "uncivil, abrasive, abusive, uncooperative, disruptive, disrespectful, hostile, or obstructive."  Respondent indeed "wholeheartedly promise[d]" to act with such courtesy.  He was unable to keep that promise on August 24, 2015.  Notably, the Order of Private Reprimand also indicated that disciplinary action was warranted at the time because the November 16, 2012 incident was not Respondent's first act of misconduct.

In short, the Court cannot ignore these repeated acts of unprofessional conduct.

In determining the appropriate action, the Court must impose a sanction that is sufficient but not greater than necessary to send a clear message to Respondent that his conduct on August 24, 2015, as well as his conduct on November 16, 2012 and on other dates, will not be tolerated. The message must be clear to Respondent, the legal community, and the public that the Court

takes the New York State Rules of Professional Conduct seriously and that those breaking the Rules do so at their own peril.

With this in mind, the Court does not believe that issuing yet another private reprimand would send a strong enough message. The Court has also considered issuing a public reprimand, which is the next level of possible discipline. A public reprimand might be justified here if not for Respondent's repeated violations of the New York State Rules of Professional Conduct.

A lengthy suspension or disbarment, however, is also not warranted, especially given that the discipline imposed will have collateral consequences. Respondent's law firm, partnership, staff, and clients will be impacted. The Court will also be impacted as Respondent has a number of cases currently active with our Court.

As a final word on the following sanction, the Court recognizes that in our adversarial system, interactions between counsel—especially in the courtroom—can occasionally become heated. Acting out towards opposing counsel in a disrespectful and hostile manner is, however, never acceptable. Such conduct undermines the dignity and integrity of proceedings in our Courts.

Therefore, it is hereby:

ORDERED, that Respondent John R. Parrinello, Esq. is suspended from the practice of law in the United States District Court for the Western District of New York for 180 days, effective immediately; and it is further

ORDERED, that the Order of Private Reprimand issued on April 22, 2013 be made public; and it is further

ORDERED, that certain documents underlying the Order of Private Reprimand issued on April 22, 2013, specifically, the statements by witnesses to the incident and the record of the

November 20, 2012 proceeding before United States Magistrate Judge Marian W. Payson, shall

be made public; and it is further

ORDERED, that Respondent's future conduct shall be courteous and professional and

shall not be uncivil, abrasive, abusive, uncooperative, disruptive, disrespectful, hostile, or

obstructive.

IT IS SO ORDERED.

DATED: January 22, 2016
Rochester, New York

Hon. Frank P. Geraci, Jr.
Chief Judge
United States District Court